FILED
OCT 01 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY VFC DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO S. JIMENEZ,<br><br>        Petitioner,<br><br>v.<br><br>CYNTHIA Y. TAMPKINS,<br><br>        Respondent. | Case No.: 16cv1761-MMA(KSC)<br><br>**REPORT AND RECOMMENDA-TION RE PETITION FOR WRIT OF HABEAS CORPUS** |

      Petitioner Pablo S. Jimenez, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus challenging his conviction in San Diego Superior Court Case No. SCE 344676 for assault and battery causing great bodily injury to the victim. [Doc. No. 1, at p. 1; Doc. No. 22-1, at pp. 70-72.] The Petition includes four separate counts. [Doc. No. 1, at pp. 6-9.] After he was notified by the District Court that his Petition was mixed as it included both exhausted and unexhausted claims [Doc. Nos. 2, 10], petitioner sent a letter to the Court indicating he wished to abandon his unexhausted claims and proceed with the exhausted ones. [Doc. No. 13, at p. 1.] Thereafter, the Court issued an Order deeming the Petition amended to include only exhausted claims, directed respondent to answer the Petition, and set a deadline for petitioner to file a traverse.

1

[Doc. No. 17, at pp. 2-3.] As explained more fully below, the only exhausted claim in the Petition is based on the sufficiency of the evidence to support the great bodily injury enhancement found true by the jury.

This Court has reviewed the Petition [Doc. No. 1]; respondent's Answer and supporting Memorandum of Point and Authorities [Doc. No. 21]; the Lodgments submitted by respondent, including the state court record [Doc. No. 22, 26, 27]; and petitioner's Traverse [Doc. No. 23]. For the reasons outlined below, IT IS HEREBY RECOMMENDED that the District Court DENY the Petition.

## *Procedural History*

On February 19, 2015, petitioner was convicted by a jury of assault with a deadly weapon in violation of California Penal Code Section 245(a)(1) and battery in violation of California Penal Code Section 242. [Doc. No. 22-1, at pp. 70-71, 136.] The jury also found true that petitioner inflicted great bodily injury upon the victim, Danielle Green, within the meaning of California Penal Code Sections 12022.7(a) and 1192.7(c)(8) and that he personally used a dangerous and deadly weapon, a beer can, on the victim within the meaning of California Penal Code Section 1192.7(c)(23). [Doc. No. 22-1, at p. 70.] The trial court imposed a six-year sentence but suspended execution of the sentence and granted petitioner three years of probation. [Doc. No. 22-4, at pp. 14-18; Doc. No. 22-1, at pp. 116, 141, 142.] According to respondent, probation was later revoked, and petitioner was sentenced to six years in state prison. [Doc. No. 21-1, at p. 3.]

On direct appeal, petitioner cited the Due Process Clause of the Fourteenth Amendment and argued the evidence against him was insufficient to establish the victim suffered "great bodily injury," because she "only sustained moderate injury as a result of being struck by the beer can." [Doc. No. 22-5, at pp. 12-19 (Lodgment No. 3).] Petitioner also argued he was prejudiced, because the jury was misled by the instructions on "great bodily injury" and "serious bodily injury." [Doc. No. 22-5, at pp. 17-27.] In an unpublished opinion filed on March 24, 2016, the California Court of Appeal rejected both

///

2

16cv1761-MMA(KSC)

of these arguments and affirmed the judgment. *People v. Jimenez*, Case No. D068128, at 5, 9 (Cal. Ct. App. 2016). [Doc. No. 22-8, at pp. 5, 9 (Lodgment No. 6).]

In a petition for review filed in the California Supreme Court, petitioner argued there was insufficient evidence to support the great bodily injury enhancement but did not raise his claim of instructional error. [Doc. No. 22-9, at pp. 1-15 (Lodgment No. 7).] On June 13, 2016, the California Supreme Court denied the petition for review without comment. [Doc. No. 10 (Lodgment No. 8).]

The Federal Petition was then filed on July 7, 2016. [Doc. No. 1.] The form Federal Petition includes four counts: (1) ineffective assistance of counsel; (2) sufficiency of the evidence to support the jury's true finding on the great bodily injury enhancement; (3) "self defense" (or sufficiency of the evidence to support the jury's convictions on assault and battery); and (4) sufficiency of the evidence to support the jury's finding that petitioner used a deadly weapon. [Doc. No. 1, at pp. 6-9.] The record before the Court indicates that petitioner's ineffective assistance of counsel claim (Count 1) is unexhausted, because he did not raise this issue on direct appeal or in a collateral review proceeding. For the same reason, the sufficiency of the evidence claims in Counts 3 and 4 are unexhausted. On direct appeal, petitioner only challenged the sufficiency of the evidence to support the great bodily injury claim and did not challenge the evidence supporting the assault and battery convictions or the enhancement based on use of a deadly weapon. Count 2 is exhausted, because petitioner specifically argued in his direct appeals to the California Court of Appeal and the California Supreme Court that the evidence is insufficient to support the great bodily injury enhancement. [Doc. No. 22-5 (Lodgment No. 3); Doc. No. 22-8 (Lodgment No. 6); Doc. No. 22-9 (Lodgment No. 7).] As mentioned above, petitioner elected to abandon any unexhausted claims, so this Report and Recommendation will only address the claim in Count 2 of the Petition that challenges the sufficiency of the evidence to support the great bodily injury enhancement.

///

///

## Factual Background

In reviewing a federal Petition for Writ of Habeas Corpus, this Court gives deference to the state court findings of fact and presumes them to be correct. Petitioner may rebut this presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992). The following facts are taken from the California Court of Appeal's unpublished decision denying petitioner's direct appeal in Case No. D068128 (San Diego Superior Court Case No. SCE 344676).

> On October 2, 2014, petitioner and the victim, Danielle Greene, were outside her home when they became embroiled in an argument. The victim told [petitioner] to leave and, when he refused, she grabbed a stick and began waving it at him to intimidate him. [Petitioner] responded by pulling a knife and approaching [the victim]. She grabbed an aluminum baseball bat to defend herself, and [petitioner] broke off a white picket from a fence and had weapons in both hands. However, [petitioner] then said 'fuck this shit,' dropped the picket, and took an unopened 12-ounce beer can from his pocket and threw it at her head '[l]ike a major league baseball pitcher.'
>
> [Petitioner] was five to eight feet from Greene when he threw the can. The can struck [the victim] in the temple, close to the corner of her right eye, with such force that the can crimped to the top lip of the can and caused it to burst open and empty its contents. [The victim] momentarily blacked out, but she regained consciousness while still standing. The impact caused a gash near her right eye. The laceration was one to two inches long, and required medical treatment consisting of liquid stitches inside the wound, irrigation of the wound, pinching it shut and placing liquid stitches on the outside of the wound, and then using butterfly bandages to support the liquid stitches. At the time of trial, she still had a visible scar near her right eye that was 'not going to go away.'

[Doc. No. 22-8, at pp. 2-3.]

## Discussion

### I. Standard of Review.

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A

4

federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted).

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotations omitted). Under AEDPA, a habeas petition "on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2). For purposes of Section 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus relief. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (concluding that the state court's decision did not unreasonably apply clearly established Supreme Court law, because the relevant cases provided "no clear answer to the question presented").

The AEDPA standard is highly deferential and "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Federal habeas relief may be granted under the "contrary to" clause of Section 2254 if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The focus of inquiry under the "contrary to" clause is "whether the state

court's application of clearly established federal law is objectively unreasonable." *Id.* "[A]n unreasonable application is different from an incorrect one." *Id.* In other words, federal habeas relief cannot be granted simply because a reviewing court concludes based on its own independent judgment that the state court decision is erroneous or incorrect. *Id.* Habeas relief is only available under Section 2254(d)(1) "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Where there is no reasoned decision from the state's highest court, Federal Courts "look through" to the "last reasoned state-court opinion" and presume it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-806 (1991). If the state court does not provide a reason for its decision, the Federal Court must conduct an independent review of the record to determine whether the state court's decision is objectively unreasonable. *Crittenden v. Ayers*, 624 F.3d 943, 947 (9th Cir. 2010). To be objectively reasonable, a state court's decision need not specifically cite or rely on Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court's decision will not be "contrary to clearly established Federal law." *Early v. Packer*, 537 U.S. 3, 8 (2002).

## II. *Review of Petitioner's Sufficiency of the Evidence Claim.*

### A. *Clearly Established Supreme Court Law.*

The clearly established Supreme Court law for evaluating sufficiency of the evidence claims is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). With reference to the Due Process clause of the Fourteenth Amendment, the Supreme Court in *Jackson v. Virginia* held that the "relevant question" for a Federal Court reviewing a sufficiency of the evidence claim by a state prisoner is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

6

essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 324 (emphasis in original). The role of the Federal Court on Federal habeas review is not to re-weigh the evidence or to resolve conflicts in the testimony. "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* at 319. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. The sufficiency of the evidence "must be gauged in light of applicable [state] law defining the element[s]" of the offense. *Id.* at 324.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' [Citation omitted.] And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' [Citations omitted.]" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

### B. *The Last Reasoned State Court Opinion.*

In reviewing sufficiency of the evidence claims on direct appeal, the standard of review applied by California courts is in accord with the Federal standard. *People v. Jackson*, 58 Cal. 4th 724, 749 (Cal. S.Ct. 2014). On appeal, California courts review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence so that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* As with the Federal standard, reviewing courts in

7

California do not re-weigh the evidence, resolve evidentiary conflicts, or determine the credibility of witnesses. *Id.*

In this case, the California Court of Appeal concluded there was substantial evidence in the record to support the jury's true finding on the great bodily injury enhancement. [Doc. No. 22-8, at p. 5.] In support of its conclusion, the California Court of Appeal noted that "great bodily injury" is: (1) defined by the statute in question as "a significant or substantial physical injury;" (2) is a question of fact for the jury; and (3) is typically established by evidence of the victim's physical injury, pain, and/or medical care. [Doc. No. 22-8, at p. 5, citing Cal. Penal Code § 12022.7(f) and *People v. Escobar*, 3 Cal.4th 740, 750 (1992).][1]

In pertinent part, the California Court of Appeal's opinion also states as follows:

> [A] victim need not suffer 'permanent, prolonged or protracted disfigurement, impairment, or loss of bodily function.' (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) Instead, 'some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of great bodily injury.' (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.) Thus, an injury causing only short-lived pain and no permanent injury can support a finding of great bodily injury. (See, e.g., *People v. Wolcott* (1983) 34 Cal.3d 92, 107 [bullet fragments cut into victim's arms and legs; victim lost little blood, was given no sutures, was released after treatment and returned to work the next day]; *People v. Lopez* (1986) 176 Cal.App.3d 460, 463-464 [bullets hit one victim in buttocks and another in the thigh; no evidence that wounds were more than superficial or that the victims suffered more than initial distress].)

\* \* \* \*

---

[1] The "great bodily injury" enhancement was charged under California Penal Section 12022.7, which defines "great bodily injury" as "a significant or substantial physical injury." Cal. Penal Code § 12022.7. At trial, the jury was instructed that "great bodily injury" means "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." [Doc. No. 22-3, at p. 144. *See also* CALJIC No. 17.20, Infliction of Great Bodily Injury (2005 ed.).]

> Substantial evidence supported the jury's determination that [petitioner] inflicted great bodily injury. [The victim] testified that, when the can struck her head, she momentarily blacked out, she suffered a gash of between one to two inches that required medical attention and stitches, and the scar was still visible months later. Additionally, the jury saw photographs of the injury, which it was entitled to consider in 'draw[ing] that line.' (*Cross, supra,* 45 Cal.4th at p. 64.) Although [petitioner] complains there was no expert testimony [the victim] suffered a concussion, and no medical testimony on the severity of the injury or the duration or nature of its consequences, the jury was entitled to credit [the victim's] testimony in reaching its conclusion that she had suffered a concussion and did have permanent scarring. (Cf. *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 [when assessing a challenge asserting no substantial evidence, '[e]ven when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding'].) We conclude substantial evidence supports the true finding on the [great bodily injury] enhancement.

[Doc. No. 22-8, at pp. 5-6.]

### C. *Petitioner's Sufficiency of the Evidence Arguments.*

Petitioner argues in Ground Two of the Petition that the evidence against him on the great bodily injury allegation is insufficient, because: (1) the victim could not show she actually blacked out; (2) the doctor did not diagnose a concussion; (3) the victim "only needed crazy glue stitches"; and (4) the victim drove herself to the hospital and did not need an ambulance. [Doc. No. 1, at p. 7.][2] In his Traverse, petitioner adds that he did not intend to hurt the victim. Rather, he was "merely trying to avoid being struck by her bat." [Doc. No. 23, at p. 6.] He also contends that the can was empty, and it was "all hearsay" on the part of the victim that he threw the can "like a pitch." [Doc. No. 23, at p.

---

[2] Similarly, in the opening brief he filed with the California Court of Appeal, petitioner argued the evidence to support the great bodily injury enhancement was insufficient, because: (1) there was inconsistent evidence as to whether the victim actually "blacked out" or had a concussion; (2) the victim received minimal medical treatment; (3) evidence of scarring from the injury was minimal; and (4) evidence of pain and suffering was not presented. [Doc. No. 22-5, at pp. 10-14 (Lodgment 3).]

9

10.] Essentially, petitioner's arguments attack the quantity and quality of the evidence presented to establish that the victim's injury was significant or substantial enough to constitute great bodily injury. In petitioner's view, the evidence presented at trial was only enough to establish that the victim suffered a minor or moderate injury as a result of being struck in the head with a beer can. Respondent argues it was reasonable for the California Court of Appeal to reject petitioner's sufficiency of the evidence claim, because rational jurors could conclude based on the evidence presented at trial that the victim's injury was substantial enough to constitute great bodily injury. [Doc. No. 21-1, at pp. 7-8.]

Based on a review of the record, it is this Court's view that petitioner's arguments do not establish that the California Court of Appeal's rejection of his sufficiency of the evidence claim was objectively unreasonable or contrary to clearly established Supreme Court law. First, as the California Court of Appeal noted in its opinion: "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Where to draw that line is for the jury to decide." [Doc. No. 22-8, at p. 5, quoting *Escobar*, 3 Cal. 4th at 752 and *People v. Cross*, 45 Cal.4th 58, 66 (2008) (internal citations and quotations omitted).] Likewise, the sufficiency of the evidence standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

In pertinent part, the victim testified as follows:

    Q.    Approximately how far were you from [petitioner] when he threw the beer can at you? . . . Point at something in this courtroom.

    A.    The second juror, maybe closer, though, if I'm standing and someone is standing, you know.

    Can I do that, your Honor?

THE COURT: Yes.

THE WITNESS: Keep coming this way. About there. So, like, six feet, five feet, around there.

THE COURT: Well, I think it's a little longer than six feet. I'm thinking about eight feet, but I defer to counsel.

* * * *

Q. Can you describe the manner in which he threw the beer can at you?

A. Like a major league baseball pitcher. Hard. . . . He lifted his left leg like this and went like this, and threw it as hard as he could, and that's when I blacked out.

BY MR. CARBERRY:
Q. All right. Now, you say you felt the can hit your head?

A. Yeah. I felt it burst, and I blacked out. I didn't even know it ricocheted off my shoulder.

Q. When you say you blacked out, what do you mean?

A. Everything went black. Everything. When I came to, I could see the can flying off to my left and I thought it only hit my head and went flying, but I kept complaining to the doctors of the pain in my shoulder, and turned out it richocheted and I didn't even know.

* * * *

Q. Taking a look at People's Exhibit 3, do you recognize this photograph?

A. Yes.

Q. And how do you recognize it?

A. That's me.

| | |
|---|---|
| 1 | Q. And does that accurately show you after this incident? |
| 2 | A. Yes. |
| 3 | |
| 4 | Q. Is that a yes? |
| 5 | A. Yes. |
| 6 | |
| 7 | Q. Ok. And I know this is tough. Just take a second. |
| 8 | A. My kids seen that. |

\* \* \* \*

THE COURT: We have some Kleenex over there.

Q. So I know it's tough to see, but looking at the screen –

MR. CARBERRY: I'll give her a minute.

THE COURT: Yes.

THE WITNESS: Sorry.

THE COURT: That's okay. When you're ready, I'm going to have you look at the screen. The attorney has a question for you.

BY MR. CARBERRY:

Q. Now, I know it's tough to see, but is the screen in the middle of the courtroom the same one I just showed you?

A. Yes, sir.

Q. All right. So looking at this photograph, can you describe what we're looking at?

A. That's the injury I received from [petitioner] hitting me with the beer.

Q. Do you know approximately when this photograph was taken after the incident?

A. Shortly after. I don't know how many minutes. 20, 30 minutes after the incident.

Q. All right. Now, there appears to be a cut –

A. Yes.

Q. -- being shown here. Approximately how large was that cut?

A. About – it's still there. It's about an inch, two inches, or something, to the bone.

Q. All right. Did you have that cut treated?

A. Yes, sir.

Q. And how did you get it treated?

A. They did liquid stitches inside the wound and irrigated it, put liquid stitches inside the wound, pinch it shut, put liquid stitches on the outside and butterflies for support.

Q. Approximately how many butterflies do you remember getting?

A. Four.

Q. Did those butterflies stretch all the way across the wound?

A. There was three like this and one like this.

THE COURT: You'll have to describe that for the record.

\* \* \* \*

A. Three vertical [butterfly bandages] and then one along the wound to help make sure it stayed shut.

\* \* \* \*

13

16cv1761-MMA(KSC)

> Q. Now, what type of treatment did you have to do with that wound after it was closed with the butterfly?
>
> A. I had to just keep it clean. . . . [E]very time I took a shower, I had to remove [the butterfly bandages] and then make sure it was clean and dry and put more back on.
>
> Q. Now, looking today at your face, do you still have a scar?
>
> A. It's not going to go away. . . .

[Doc. No. 27-1, at pp. 7-10; Doc. No. 22-3, at pp. 69-70.]

The deputy sheriff who went to the scene following the incident testified that he took the picture of the victim's injury. He then described the injury as "a gash or laceration to the right side of her – basically the temple area, right by the corner of her right eye." [Doc. No. 22-3, at p. 85.] The deputy sheriff further testified that the victim pointed to a beer can that caused the injury, and he took a photograph of the can. [Doc. No. 22-3, at p. 85-86.] From the photograph, he identified the can and indicated there was "a crimp" to the top lip of the can that was consistent with the victim's statement that she was struck in the face with the can. A copy of the photograph was shown to the jury. [Doc. No. 22-3, at pp. 85-86.]

When the evidence presented at trial is viewed in the light most favorable to the prosecution, the jury could reasonably infer that the victim's physical injury was significant or substantial rather than minor or moderate. When viewed as a whole, the evidence presented at trial effectively conveyed a forceful blow to the victim's face near her eye with a beer can from a relatively close range; a deep gash near the victim's eye that required urgent medical attention; a facial wound that needed regular home care over some period of time; and a permanent scar to the face that was visible to the jury at the time of trial, some four months after the incident. As noted, the jury was also shown a picture of the injury that was taken by a responding deputy sheriff shortly after the incident. [Doc. No. 22-3, at pp. 2, 52, 68-70, 83, 85-86; Doc. No. 27-1, at pp. 7-10.]

From the victim's repeated testimony indicating she momentarily "blacked out" when the beer can struck her face, the jury and the California Court of Appeal could have reasonably inferred that the victim also suffered a concussion. [Doc. No. 22-8, at p. 5; Doc. No. 27-1, at pp. 7-8; Doc. No. 22-3, at pp. 77, 79.]

At most, petitioner's arguments contesting the seriousness or significance of the victim's injury only indicate there is conflicting evidence in the record from which the jury might have reached a different conclusion. For example, as petitioner's arguments suggest, the victim said she "blacked out," but she also said she felt the beer can "burst" onto her head and then saw the can "flying off to [her] left." [Doc. No. 27-1, at pp. 7-8.] During cross-examination, the victim further testified she was aware of the beer can "flying in the air" and saw it "falling onto [her] porch." [Doc. No. 22-3, at p. 77.] She also said she did not fall down as a result of the blow to her head. [Doc. No. 22-3, at p. 78.] Other than the victim's testimony that she "blacked out," the record lacks evidence to indicate whether the victim was actually diagnosed with a concussion or whether she suffered the symptoms of a concussion.[3] [Doc. No. 22-3, at p. 79.] Contrary to the victim's testimony, petitioner testified that he threw the beer can "blindly" at the victim while trying to cover his face and "jump out of the car at the same time," because she was moving towards him with a baseball bat. [Doc. No. 22-3, at p. 104.] In other words, petitioner's testimony indicated he was not in a position to throw the beer can "hard" at the victim "[like] a major league baseball pitcher." [Doc. No. 27-1, at p. 7; Doc. No. 22-3, at p. 104.]

---

[3] During cross-examination, the victim said she told the responding deputy sheriff that she "blacked out," but she did not tell him that she had a concussion, "because [she] didn't know [she] had a concussion." [Doc. No. 22-3, at p. 79.] The deputy sheriff said he did not write anything in his report about her "blacking out" or having a concussion. [Doc. No. 22-3, at pp. 89-90.] However, this conversation with the deputy sheriff took place at the scene of the incident before the victim had her injury treated, so it could be interpreted to mean she did not know at the time she spoke with the deputy that she actually did have a concussion.

As noted above, the standard of review set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, does not permit a reviewing court to re-weigh or resolve conflicts in the evidence. Rather, a reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution. *Id.* at 326. In other words, this Court must presume that the jury believed the victim's testimony and disbelieved petitioner's conflicting testimony. The California Court of Appeal made the same presumption. [Doc. No. 22-8, at p. 5 (stating as follows: "Although [petitioner] complains there was no expert testimony [petitioner] suffered a concussion, and no medical testimony on the severity of the injury or the duration or nature of its consequences, the jury was entitled to credit [the victim's] testimony. . . .).] Therefore, it is this Court's view that the California Court of Appeal did not unreasonably apply the clearly established Supreme Court law set forth in *Jackson v. Virginia*, 443 U.S. 307. Nor is the California Court of Appeal's rejection of petitioner's sufficiency of the evidence argument contrary to clearly established Supreme Court law as set forth in *Jackson v. Virginia*.

To the extent petitioner's allegations in Count 2 of the Petition can be read to complain that the California Court of Appeal misinterpreted or misapplied California law as to the great bodily injury enhancement, his claim is not cognizable on Federal habeas review. Federal habeas relief is not available for state law errors. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "federal habeas corpus relief does not lie for errors of state law" and stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005) (stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

### ***Conclusion and Recommendation***

Based on the foregoing, IT IS HEREBY RECOMMENDED that the District Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered DENYING the Petition. This Report and

16

16cv1761-MMA(KSC)

Recommendation is submitted to the assigned United States District Judge pursuant to Title 28, United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

IT IS HEREBY ORDERED that no later than ***November 2, 2018*** any party to this action may file and serve written objections to this Report and Recommendation. The document should be captioned "Objection to Report and Recommendation.

IT IS FURTHER ORDERED that any reply to the objection shall be filed and served no later than ***November 16, 2018***. The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appear of this Court order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 1, 2018

Hon. Karen S. Crawford
United States Magistrate Judge